318 S.E.2d 634

**Carol Jean HARTLEY**

v.

**Steven Frank UNGVARI.**

**No. 15877.**

Supreme Court of Appeals of West Virginia.

July 13, 1984.

Joseph W. McFarland, Redmond & McFarland, Parkersburg, for appellant.

R. Edison Hill, Charleston, for appellee.

McHUGH, Chief Justice:

This action is before this Court upon the appeal of Steven Frank Ungvari, the appel-

lant, from an order of the Circuit Court of Jackson County in which that court awarded to Carol Jean Hartley, the appellee, limited reimbursement of past child support and attorney fees and prospective child support and attorney fees. The issues to be resolved by this Court are whether the trial court had the authority to award reimbursement of past child support expenditures and attorney fees to the appellee and whether it did so properly. This Court has before it the petition for appeal, all matters of record and the briefs of counsel.

The appellant and the appellee were married on November 25, 1967. Their daughter, Heather, was born on January 3, 1969. In 1972, the appellee left the marital home in New York with her daughter, and moved into her parent's home in Ravenswood, West Virginia. On July 2, 1973, the appellee obtained a divorce from the appellant in the Circuit Court of Jackson County upon constructive service of process. Consequently, in the final divorce order, the circuit court expressly reserved jurisdiction to award alimony, child support and attorney fees in the event personal jurisdiction is later acquired of the appellant.

Over the next nine years, the appellant frequently visited his daughter in West Virginia. During these visits, the appellant would give the appellee money for the support of his daughter, and he would frequently take his daughter on shopping trips to buy her clothing and other necessities. In addition, the appellant would periodically send the appellee checks for the support of his daughter. Over the period of 1973–1981, the appellant estimated his total contribution to the support of his daughter to be approximately $12,000. The circuit court, applying a five-year statute of limitations to the appellee's request for reimbursement of child support, calculated the appellant's contribution to the support of his daughter to be $4,205.09 over the period of 1977–1981.

On December 29, 1981, the Circuit Court of Jackson County obtained personal jurisdiction over the appellant when he was served with the appellee's petition for an award of child support while he was in this State visiting his daughter. On March 5, 1982, the court entered an order awarding the appellee temporary child support in the amount of $300.00 per month pending a subsequent hearing on the issues of child support and attorney fees. Following the hearing, the circuit court, in an order entered June 4, 1982, applied a five-year statute of limitations and awarded the appellee $10,731.25 plus interest as reimbursement for past child support expenditures and $325 as reimbursement for past attorney fees. The circuit court further awarded the appellee permanent child support in the amount of $300 per month until the daughter reaches the age of 18 or is otherwise emancipated.[1]

The issue concerning the power of the trial court to award reimbursement of past child support expenditures revolves around the meaning of language found in *W.Va. Code*, 48–2–15 [1980]. It provides, in pertinent part, as follows:

In any case where a divorce is granted in this State upon constructive service of process, and personal jurisdiction is thereafter obtained of the defendant in such case, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them, or concerning the

---

1. In dealing with the merits of this action, the parties have used the terms "reimbursement" and "retroactive" interchangeably to denote the request of the appellee. We perceive a difference between a request for "retroactive" child support and "reimbursement" for child support expenses incurred by the custodial parent previous to a court order requiring support. *See Gill v. Gill,* 56 Ill.2d 139, 306 N.E.2d 281 (1973). Few jurisdictions allow the actual "retroactive" award of child support or alimony after personal jurisdiction has been obtained over a defendant in a divorce obtained by constructive service of process. *See, e.g., Wright v. Wright,* 411 So.2d 1334 (Fla.Dist.Ct.App.1982); *Lowe v. Lowe,* 28 A.D.2d 212, 284 N.Y.S.2d 227 (1967); *Mittman v. Mittman,* 263 A.D. 384, 33 N.Y.S.2d 211 (1942); *McSwain v. Holmes,* 269 S.C. 293, 237 S.E.2d 363 (1977). In her petition for relief in the action below, the appellee asked the trial court to order the appellant "to reimburse the plaintiff for monies spent for child support in the past, since the divorce was consummated." This Court will, therefore, treat the appellee's request as one for reimbursement of past child support furnished to the child since the divorce.

care, custody, education and maintenance of the minor children....

Both parties focus upon different language in this statutory provision to support their respective positions. The appellant argues that the word "further," as contained in the above statute, indicates a clear intent on the part of the legislature to only provide a prospective remedy with respect to child support. The appellee contends, on the other hand, that the inclusion of the word "expedient" in this statute authorizes a trial court to award whatever support it deems necessary for the maintenance of the minor children, including reimbursement to a custodial parent of past child support expenditures. The appellee further asserts that the trial court's authority to award such reimbursement emanates from the continuing duty of parents to support their minor children regardless of judicially determined support obligations.

Many jurisdictions have held that where a divorce order grants custody of a child to a parent and no other provision is made for the support of the child, the support obligations of the noncustodial parent are not terminated and under the proper circumstances, the noncustodial parent may be liable to the custodial parent for reimbursement of support furnished to the child after the divorce. *See generally* H. Clark, *Law of Domestic Relations* § 15.1 (1968); *Annot.*, 91 A.L.R.3d 530 (Supp.1983); 24 Am. Jur.2d *Divorce and Separation* § 1095 (1983); 27B C.J.S. *Divorce* § 319(1)(c) (Supp.1984). On the other hand, as noted in the editorial summary of *Annot.*, 91 A.L.R.3d 530 (Supp.1983):

> [I]t has been held that a father is not liable to the mother for support of a child after a divorce decree granting the mother custody without providing for support of the child, where the father was financially unable to furnish support, where the mother furnished the support without expectation of reimbursement, or

where the father had supplied the child with his reasonable needs.

(footnotes omitted).

In *Gill v. Gill*, 56 Ill.2d 139, 306 N.E.2d 281 (1973), the Supreme Court of Illinois was confronted with a factual situation similar to the case now before this Court. In *Gill*, the plaintiff mother had received a divorce from the defendant father by constructive service of process and was awarded custody of their son. In granting the divorce, the trial court had "reserved the question of child support, alimony and attorney's fees." 56 Ill.2d at 141, 306 N.E.2d at 282. Approximately 15 years later, personal jurisdiction was obtained of the defendant by the trial court and the plaintiff sought reimbursement from the defendant for support expenditures furnished to the. child since the divorce. The trial court subsequently awarded the plaintiff $13,500 as reimbursement for support furnished to the child from the date of the original divorce to the date of the child's eighteenth birthday: a total of 13 years.

In affirming the trial court's reimbursement award, the court in *Gill* reasoned that the obligation of a parent to support his or her minor child is a duty that begins at the birth of the child and continues throughout the minority of the child.[2] It is a duty that is not affected by a divorce between the parents nor the award of custody to one of them. "It is not their fault that their parents have been divorced." 56 Ill.2d at 144, 306 N.E.2d at 283, *quoting Kelley v. Kelley*, 317 Ill. 104, 110, 147 N.E. 659, 662 (1925). The court further stated that its decision to allow such reimbursement conforms with

> the view held in the majority of jurisdictions that when a divorce decree provides for the custody of a child but is silent as to the question of child support, a mother may maintain an action against her for-

**2.** It is uncontested by either party that in West Virginia each parent has a duty of support to their unemancipated children and this duty continues throughout the minority of the children. *W.Va.Code*, 48–7–1 [1983]; *see also Murredu v.*

*Murredu*, 160 W.Va. 610, 236 S.E.2d 452 (1977); *Brady v. Brady*, 151 W.Va. 900, 158 S.E.2d 359 (1967); *Robinson v. Robinson*, 131 W.Va. 160, 50 S.E.2d 455 (1948).

mer husband for moneys expended by her after the decree to support the child. 56 Ill.2d at 144, 306 N.E.2d at 283.

In *Marks v. Mitchell,* 90 W.Va. 702, 111 S.E. 763 (1922), this Court impliedly acknowledged that a custodial parent may seek reimbursement of child support expenditures from the noncustodial parent. In that case we held, *inter alia,* that although a subsequent award of child custody and alimony to the ex-wife was void for lack of personal jurisdiction over the ex-husband, the ex-wife's attachment of the ex-husband's partial interest in real estate for purposes of reimbursement of support furnished to their children was valid and was improperly dismissed by the trial court.

■ Based upon all of the above, we hold that under the provisions of *W.Va. Code,* 48–2–15 [1980], where a divorce is granted upon constructive service of process and the divorce order grants custody of a child but makes no further provision for the support of that child, the custodial parent may maintain an action against the noncustodial parent, upon obtaining personal jurisdiction thereof, for reimbursement of reasonable past support expenditures furnished to the child by the custodial parent since the divorce unless, because of circumstances, the custodial parent is estopped from asserting the action.

■ In the action now before us, however, the trial court erred when it awarded the appellee reimbursement of past child support expenditures. In the hearing below, the appellant had moved the trial court to dismiss the reimbursement action based upon the equitable defense of laches. The appellant argued that inasmuch as the appellee knew of his whereabouts during the period between the divorce and the commencement of the action and had many opportunities to obtain personal jurisdiction of him during his numerous trips to visit his daughter, she should be prevented from seeking reimbursement of past support expenditures. The trial court rejected the appellant's arguments and held that since the appellant had suffered no prejudice by the appellee's inaction, that is, he was able to retain and use the money over the years, the appellee would not be prevented from seeking reimbursement from the appellant.

■ In syllabus point 4 of *Laurie v. Thomas,* 170 W.Va. 276, 294 S.E.2d 78 (1982), this Court set forth the general rules with regard to the equitable defense of laches: "'The general rule in equity is that mere lapse of time, unaccompanied by circumstances which create a presumption that the right has been abandoned, does not constitute laches.' Syllabus Point 4, *Stuart v. Lake Washington Realty Corporation,* 141 W.Va. 627, 92 S.E.2d 891 (1956)." *See also* syl. pt. 3, *Carlone v. United Mine Workers of America,* 161 W.Va. 351, 242 S.E.2d 454 (1978); *Condry v. Pope,* 152 W.Va. 714, 166 S.E.2d 167, 171 (1969); syl. pt. 7, *Kuhn v. Shreeve,* 141 W.Va. 170, 89 S.E.2d 685 (1955); syl. pt. 1, *Acker v. Martin,* 136 W.Va. 503, 68 S.E.2d 721 (1951); syl. pt. 2, *Hoglund v. Curtis,* 134 W.Va. 735, 61 S.E.2d 642 (1950); syl. pt. 1, *Hoffman v. Wheeling Savings & Loan Association,* 133 W.Va. 694, 57 S.E.2d 725 (1950). In syllabus point 5 of *Laurie,* however, we further held:

'Where a party knows his rights or is cognizant of his interest in a particular subject-matter, but takes no steps to enforce the same until the condition of the other party has, in good faith, become so changed, that he cannot be restored to his former state if the right be then enforced, delay becomes inequitable, and operates as an estoppel against the assertion of the right. This disadvantage may come from death of parties, loss of evidence, change of title or condition of the subject-matter, intervention of equities, or other causes. When a court of equity sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief.' Syllabus Point 3, *Carter v. Price,* 85 W.Va. 744, 102 S.E. 685 (1920); Syllabus Point 2, *Mundy v. Arcuri,* 165 W.Va. 128, 267 S.E.2d 454 (1980).

Furthermore, what constitutes laches depends upon the particular facts of each case. *See Hertzog v. Fox,* 141 W.Va. 849, 864, 93 S.E.2d 239, 247 (1956).

The record in this action clearly indicates that the appellant made frequent trips to this State to visit his daughter over the period in question. The record also discloses that such trips were usually made with prior knowledge of the appellee. The appellee had many opportunities to obtain personal jurisdiction of the appellant but, for an unknown reason, chose not to do so. Furthermore, during this period, it is uncontested that the appellant contributed to the support of his daughter in the form of periodic checks which he gave to the appellee. Further, he took his daughter on shopping trips. There is no evidence to indicate that the appellee was not cognizant of her rights with respect to seeking reimbursement from the appellant. During the period in question, she failed to avail herself of any support procedures including those provided under the West Virginia Revised Uniform Reciprocal Enforcement of Support Act, *as amended, W. Va. Code,* 48–9–1 to 48–9–42.

Contrary to the conclusions of the able trial judge, we are of the opinion that the appellant was prejudiced by the inaction of the appellee with respect to her failure to seek reimbursement of past support expenditures or prospective child support during the period in question. It is clear from the record that the appellant relied, in good faith, upon the appellee's inaction to the extent that his conditions have changed and he can no longer be restored to his former state. In December of 1980, the appellant purchased a house in Michigan and in early 1981, he remarried. He is now burdened with a debt of over $10,000 in addition to his prospective child support obligation. The appellee offers no explana-

tion for her delay in seeking reimbursement of past child support expenditures.

Although the facts are somewhat dissimilar, the Supreme Court of Rhode Island in *Pukas v. Pukas,* 104 R.I. 542, 247 A.2d 427 (1968), reasoned that such an unexplained delay in the assertion of a right by an ex-wife and the resultant large debt to the ex-husband was sufficient to bar the ex-wife under the doctrine of laches. In *Pukas,* the ex-wife sought to modify a final divorce order to include child support four years after the divorce. She argued that such child support was inadvertently omitted from the original divorce order and she sought the child support retrospectively and prospectively. We agree with the reasoning of the court in *Pukas* when it found that the ex-husband was prejudiced by the delay inasmuch as he had a right to rely upon the original divorce order and, as a result, was prejudiced by the imposition of a large lump sum child support debt.[3] In the case now before us, it would be inequitable to force the appellant to pay the reimbursement award because he has been prejudiced by the inaction of the appellee.

 For the foregoing reasons, the circuit court's award of prospective child support is affirmed; however, its reimbursement award of past child support and attorney fees to the appellee is hereby reversed.

Affirmed in part; reversed in part.

---

**3.** It should be noted that in *Gill v. Gill, supra,* the defense of laches was asserted by the noncustodial parent, however, he was denied relief because he had intentionally evaded the personal jurisdiction of the trial court and had concealed his whereabouts from the custodial par-

ent over the 13-year period. He also contributed nothing to the support of the child. Such is not the case in the action before us.