# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**May 20, 2024**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Lewis Springer and
Karen Springer,
Plaintiffs Below, Petitioners**

**v.) No. 22-586** (Summers County CC-45-2021-C-39)

**Wes Runyan,
Tamy Runyan,
Tracy Wilson, and
David Wilson,
Defendants Below, Respondents**

## MEMORANDUM DECISION

Petitioners Lewis Springer and Karen Springer ("petitioners") appeal the Circuit Court of Summers County's June 23, 2022, order granting Respondents Wes Runyan, Tamy Runyan,[1] Tracy Wilson, and David Wilson's[2] (collectively "respondents") motion to dismiss filed pursuant to West Virginia Rule of Civil Procedure 12(b)(6).[3] The parties are current or former owners of tracts of land in the Big Bend Mountain Retreat ("BBMR") in the Talcott District of Summers County. The petitioners contended that the respondents were unjustly enriched because respondents used water from an underground well ("the well property") owned by the BBMR water association without paying for it. The respondents argued that the petitioners' unjust enrichment claim is barred by the doctrine of laches. The circuit court determined that the petitioners' claim was barred by the doctrine of laches and accordingly granted the respondents' motion to dismiss.

After careful review of the briefs of the parties, their oral arguments, the appendix record, and the applicable law, we determine that the circuit court erred in granting the motion to dismiss. *See id.* Accordingly, we reverse the circuit court's order and remand the case for further proceedings. Because this case presents no substantial question of law, we find that it satisfies the

---

[1] Wes and Tamy Runyan are sometimes referred to as "the Runyan respondents."

[2] Tracy and David Wilson are sometimes referred to as "the Wilson respondents."

[3] Petitioners appear by counsel Ronald N. Walters Jr. and Walters Law Firm, PLLC. The Runyan respondents appear by Daniel J. Burns and Pullin, Fowler, Flanagan, Brown & Poe, LLC. The Wilson respondents appear by Christine B. Stump and Stump and Associates, PLLC.

1

"limited circumstances" of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is appropriate for disposition by a memorandum decision rather than an opinion.

## I.     Facts and Procedural History

The parties are or were landowners in BBMR and this litigation concerns the well property and the use of water in BBMR. Following litigation in 2010 concerning the use of BBMR well property the circuit court ordered the formation of a water association to accept ownership of the well property. A 2012 deed ("water association deed") transferred property to BBMR Water Utility Association ("water association")[4] and provided that the water association would be comprised of those landowners who use the water system and "[t]he Association will fully account to its members for expenses and capital expenditures." The water association deed further provided that all BBMR residents "will pay their pro-rata share of the costs of operating the water system" and will "have an absolute right to use the water system upon payment of the rates established by the Association[.]" Notwithstanding the language of the water association deed, it does not appear from the record that a formal water association was ever created or that water rates were ever established.

The Runyan respondents purchased their lot in BBMR on March 11, 2021, and their deed referenced the water association deed. Following their purchase, they hooked their mobile home to the well property water access port and thereafter, although the petitioners purportedly informed them of the requirement that they pay for the water, they refused to do so. The petitioners then placed a lock on the well house and on the Runyan respondents' water meter, thus denying them access to the water. The Runyan respondents filed an action for injunctive relief in circuit court, seeking to enjoin the petitioners from blocking access to the well water. Ultimately the parties stipulated to the entry of a permanent injunction enjoining the petitioners from blocking access to the well property.

The petitioners have owned property in BBMR since before the water association deed was executed, and they claim to have expended more than $20,000 for upkeep, maintenance, operation, and preservation of the well property, including the well house and the well, to ensure access to clean, drinkable water to operate the water system. They filed the instant complaint against the respondents, claiming that the respondents have been unjustly enriched[5] by using BBMR water

---

[4] The water association was a named defendant in the action below but is not a party to this appeal as it was never formally created. *See* text supra.

[5] In *Realmark Developments, Inc. v. Ranson*, 214 W. Va. 161, 588 S.E.2d 150 (2003), this Court discussed the claim of unjust enrichment and looked to jurisprudence from another jurisdiction:

> "The theory on which the plaintiff in this suit seeks money damages, unjust enrichment, sometimes referred to as restitution, a contract implied in law, quasi-contract, or an action in *assumpsit,* is the product of a long tradition in law, and is an action at law. (*Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 173, 97 N.E. 280, 284–85; *Dickerson*

2

without paying for either the water or any operational costs. Specifically, the petitioners alleged the following: litigation expenses in obtaining a right to the well property and then defending the water association against an injunction brought against the water association; pipe and pump replacement including costs associated with drilling; pressure washing the well house; staining the well house; payment to Mr. and Mrs. Gillis[6] for well house repairs; locks, lighting and general fixtures for the well house; travel expenses to attend to matters related to the water association; mailing expenses; trade name registration; general property maintenance including grass cutting, weeding, ensuring proper draining, tree and brush trimming; and electric bills for the well property. With the exception of a $2,000 payment from the Wilson respondents, the petitioners maintain that they have received no other monies from the respondents for use of the well water, well operations, maintenance or repairs.

In response to the petitioners' complaint, the respondents jointly moved to dismiss pursuant to Rule 12(b)(6). They maintained that the petitioners' claim of unjust enrichment was barred by the doctrine of laches, and that the petitioners have "not pled, nor can they maintain, that there was a benefit that was retained in an inequitable and unconscionable manner." Further, they contended that the petitioners' claimed expenses were for items that did not directly impact the ability of BBMR residents to get or maintain access to the well water property. Rather, the respondents argued that many of the petitioners' alleged expenses stemmed from the petitioners' unilateral decisions to take action to further their own position, either in this case or in the prior proceedings. The respondents further claimed that they were prejudiced because the petitioners were "seeking recovery of monies allegedly expended over the course of thirteen (13) years, only one (1) of which these [respondents] have owned property in the subject area."

---

*Realtors, Inc. v. Frewert* (1974), 16 Ill.App.3d 1060, 1063, 307 N.E.2d 445, 448; see Restatement of Restitution, Introductory Note (1937); 1 Palmer, Restitution sec. 1.2 (1978); 1 A. Corbin, Contracts, sections 19, 20 (1 vol. ed.1952); Dobbs, Remedies sec. 4.2, at 232 (1976).) The confusion with equity emanates from the decision of the King's Bench in 1760 in the case of *Moses v. Macferlan,* 2 Burr. 1005, 97 Eng.Rep. 676, where Lord Mansfield stated that the defendant's obligation came 'from the ties of natural justice' founded in 'the equity of the plaintiff's case.' (See 1 Palmer, Restitution sec. 1.2, at 7 (1978); *Board of Highway Commissioners v. City of Bloomington* (1911), 253 Ill. 164, 173, 97 N.E. 280, 285.) As Palmer explains, the statement concerning the action of quasi-contract being equitable has been repeated many times, but merely refers to the way in which a claim should be approached 'since it is clear that the action is at law and the relief given is a simple money judgment.' (1 Palmer, Law of Restitution sec. 1.2, at 7 (1978).). . ."

*Realmark Dev.*, 214 W. Va. at 164, 588 S.E.2d at 153 (quoting *Nehi Beverage Co. v. Petri*, 537 N.E.2d 78, 85 (Ind. Ct. App. 1989)).

[6] Mr. and Mrs. Gillis sold their BBMR property to the Wilson respondents.

At the hearing on the motion to dismiss the circuit court considered two documents that were not attached to the petitioners' complaint: the water association deed, and a list of expenses exceeding $30,000 for upkeep of the well property. The list of expenses contains dates, payments, and descriptions of out-of-pocket payments purportedly made by the petitioners from 2006 to 2021.[7] Although it is somewhat unclear, it appears from the record that this document may have been created by the petitioners and provided to the respondents during negotiations in the previous injunction proceeding.

The circuit court found that although the respondents rely on the two documents not attached to the complaint, "disposition of this case is proper under Rule 12 of the West Virginia Rules of Civil Procedure and not Rule 56." The court concluded that it could properly consider the two documents pursuant to *Forshey v. Jackson*, 222 W. Va. 743, 671 S.E.2d 748 (2008) (discussed *infra* in greater detail). As to the water association deed, the court opined "[t]he deed is not in dispute and, as a recorded instrument, is [ ] susceptible to judicial notice." Concerning the list of expenses, the court noted that "[t]he expenses listed in this document prepared by [the petitioners] are consistent with those discussed, in general terms in [the petitioners'] complaint. Furthermore, as the same were made part of the record in the related injunctive proceeding before this court, the same is susceptible to judicial notice."

Ultimately, the circuit court granted the respondents' motion to dismiss and concluded that the petitioners' complaint was barred by the doctrine of laches. The court determined that:

> To bar a claim by laches, it must be shown, initially, that there has been a lack of diligence by the party against who the defense is asserted. If taken as true, Plaintiffs allege that the "association" was created when the deed was filed in February 2012. Thus, this Court finds that the Plaintiffs knew their rights or were cognizant of their interest in seeking reimbursement of any funds expended to operate the well. Despite that and despite the Plaintiffs expending money for the past ten (10) years, the Court finds that the Plaintiffs have never asserted [a] claim for unjust enrichment or otherwise apparently sought reimbursement for many, if not all, of the costs for which they now seek the same. Plaintiffs have not demonstrated that, aside from the instant litigation, that they have sought to seek reimbursement through any legal actions, such as a lien or a civil action, against any current or former property owner. This, at its very core, suggest that the Plaintiff has known of his alleged rights for the past ten (10) years and has failed year after year to exercise any actual or perceived right to reimbursement of any funds he may have expended.

The petitioners now appeal.[8]

---

[7] The entries on this document range from a $9,072.00 payment in "2006-2012" for "attorney fees litigation to obtain well land and well" to a payment of $155.09 to "MonPower for well house" in June and July of 2021.

[8] The Runyan respondents filed a motion to dismiss this appeal arguing that the order was not a final order because it did not pertain to all issues and all parties. They maintain that the

## II.     Standard of Review

In assessing the merits of a motion to dismiss, the circuit court must employ a stringent standard of review:

> " ' " 'The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co., Inc.*, 160 W. Va. 530, 236 S.E.2d 207 (1977).' Syl. Pt. 2, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)."

*Judy v. E. W. Va. Cmty. & Tech. Coll.*, 246 W. Va. 483, 874 S.E.2d 285 (2022). We apply the same rigorous standard of review. Accordingly, we construe the factual allegations of the complaint, including all inferences arising therefrom, in the light most favorable to the petitioners. *Chapman*, 160 W. Va. at 538, 236 S.E.2d at 212. "A motion to dismiss for failure to state a claim is viewed with disfavor[.]" *Id.* "[T]he preference is to decide cases on their merits[.]" *Sedlock v. Moyle*, 222 W. Va. 547, 550, 668 S.E.2d 176, 179 (2008) (citing *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 604-05, 245 S.E.2d 157, 158-59 (1978)).

Further,

> " ' " '[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*.' Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995)." Syllabus Point 1, *Barber v. Camden Clark Mem'l Hosp. Corp.*, 240 W. Va. 663, 815 S.E.2d 474 (2018).' Syl. Pt. 1, *Boone v. Activate Healthcare, LLC*, 245 W. Va. 476, 859 S.E.2d 419 (2021)."

*Judy*, 246 W. Va. at 484, 874 S.E.2d at 286, syl. pt. 1.

---

subject order pertained only to the Runyans and Wilsons, and, accordingly, petitioners' claims against the BBMR and the Gillises remained on the active docket of the circuit court. We have held

> [w]here an order ... completely disposes of any issues of liability as to that party, the absence of language prescribed by Rule 54(b) of the West Virginia Rules of Civil Procedure ... will not render the order interlocutory ... provided that this Court can determine .... that the trial court's ruling approximates a final order in its nature and effect.

Syl. Pt. 2, in part, *Durm v. Heck's, Inc.*, 184 W. Va. 562, 401 S.E.2d 908 (1991). In light of our disposition of this case, however, we hereby deny respondents' motion to dismiss as moot.

With these standards in mind, we proceed to the parties' arguments.

## III.    Discussion

The petitioners raise three assignments of error: 1) the circuit court erred in considering documents not attached to the complaint in its decision to dismiss the complaint; 2) the court erred by failing to convert the motion to dismiss to a motion for summary judgment; and 3) the circuit court erred by applying the doctrine of laches to the petitioners' claims. The first two assignments of error are related and we will address them together.

Initially, the petitioners argue that the circuit court erred in considering two documents that were not attached to the complaint — the water association deed and the itemization of damages — in its analysis of the motion to dismiss. Alternatively, the petitioners contend that because the court did consider the documents it should have converted the respondents' motion to a motion for summary judgment. This Court has held "[a] circuit court ruling on a motion to dismiss under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure may properly consider exhibits attached to the complaint without converting the motion to Rule 56 motion for summary judgment." *Forshey*, 222 W Va. at 744, 671 S.E.2d at 749, syl. pt. 1. However,

> [w]hen a movant makes a motion to dismiss a pleading pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, and attaches to the motion a document that is outside of the pleading, a court may consider the document only if (1) the pleading implicitly or explicitly refers to the document; (2) the document is integral to the pleading's allegations; and (3) no party questions the authenticity of the document. If a document does not meet these requirements, the circuit court must either expressly disregard the document or treat the motion as one for summary judgment as required by Rule 12(b)(7).

Syl. Pt. 6, *Mountaineer Fire & Rescue Equip. LLC v. City Nat'l Bank of W. Va.*, 244 W. Va. 508, 854 S.E.2d 870 (2020) ("*Mountaineer Fire*"). Additionally, "[a] circuit court's decision whether or not to review a document outside of the pleadings, which is attached to a motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, will be reviewed for an abuse of discretion." *Mountaineer Fire*, 244 W. Va. at 514, 854 S.E.2d at 876, syl. pt. 7.

In regard to the first document — the deed that sought to create the water association — the circuit court considered this recorded deed, which is specifically referenced in the petitioners' complaint and is integral to the allegations in the complaint. Additionally, the deed is a matter of public record and no party questions the authenticity of the document. Further, the parties do not appear to dispute that the court could appropriately take judicial notice of this deed. *See* W. Va. R. Evid. 201 (b)(2) (allowing court to take judicial notice of a fact not subject to reasonable dispute where it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Moreover, although the petitioners reference the court's purported error in considering "documents" outside of the complaint, they do not argue that the court's review of the deed was erroneous. Accordingly, pursuant to *Forshey* and *Mountaineer Fire*, we determine that the court did not err in its consideration of this document without converting the motion to dismiss to a motion for summary judgment.

Next, we turn to the circuit court's review of the itemization of damages attached to the respondents' motion to dismiss. Although the petitioners allege in their complaint that they have expended in excess of $20,000 for repairs, the complaint does not include an itemization of those expenses or provide specific dates for when those repairs were conducted. The petitioners argue that the court should not have considered the itemization of damages at the Rule 12(b)(6) stage. They contend that the itemization of damages was an incomplete list, was only used in informal negotiations and was not made a "part of the record" in the related injunction matter, as it was not attached to any filings or introduced into evidence in that matter — a fact conceded by the respondents. Moreover, they maintain that the court cannot take judicial notice of matters that are subject to reasonable dispute, and that the court's reliance on this document was ill-placed — especially since the respondents questioned the authenticity of the document. Because the petitioners maintain that the list of expenses does not meet the requirements outlined by *Mountaineer Fire*, they argue it should have been disregarded or, at a minimum, the court should have converted the respondents' motion to dismiss to a motion for summary judgment.

Conversely, the respondents argue that the circuit court did not rely on the itemization of damages in granting the motion. Alternatively, they maintain that the itemization forms the basis for the petitioners' unjust enrichment claim and mirrors those expenses claimed in the complaint The respondents suggest that because the list was prepared by the petitioners it is reasonable to believe that the petitioners relied heavily on the list to craft the complaint and had notice and possession of the itemization. Accordingly, the respondents argue that the itemization satisfies the requirements of *Mountaineer Fire.* They argue that the court did not err in considering the expense itemization in ruling on respondents' motion to dismiss.

As set forth supra, in limited circumstances this Court has found that a circuit court can consider documents outside of the pleadings at the motion to dismiss phase. For instance, in *Forshey* the Court recognized that a court may review a screening certificate of merit, a jurisdictional prerequisite for a medical professional liability claim, without converting a motion to dismiss to a motion for summary judgment. *See Forshey*, 222 W. Va. at 744, 671 S.E.2d at 749. Likewise, in *Mountaineer Fire* we were asked to determine whether the circuit court improperly considered multiple documents that were attached to the defendant's motion to dismiss. This Court found that that the court was within its discretion to review those documents upon which the plaintiffs had relied, from which they extensively quoted, and that shaped the allegations in their pleadings, without converting the motion to dismiss to a motion for summary judgment. *Mountaineer Fire*, 244 W. Va. at 528, 854 S.E.2d at 890.

Here, the itemization of expenses attached to the respondents' motion to dismiss is distinguishable from the documents that this Court found were appropriate for the circuit court to consider at the motion to dismiss phase in both *Forshey* and *Mountaineer Fire*. The itemization was exchanged informally in negotiations in another proceeding and was neither referenced nor incorporated into petitioners' complaint. Moreover, it appears that even the respondents questioned the validity of the itemization in the companion action. We therefore conclude that the court erred by considering this document and in granting the respondents' motion to dismiss without converting it to a motion for summary judgment.

7

Turning to the petitioners' final assignment of error, we are tasked with determining whether the circuit court erred in determining that the petitioners' claim and any recovery thereunder was barred by the equitable doctrine of laches. The doctrine of laches is "'an equity doctrine to the effect that unreasonable delay will bar a claim if the delay is a prejudice to the defendant.'" *Kinsinger v. Pethel*, 234 W. Va. 463, 467, 766 S.E.2d 410, 414 (2014) (quoting 1 Dan B. Dobbs, *Handbook on the Law of Remedies* § 2.4(4) (2d ed.1993)). Accordingly, "[m]ere delay will not bar relief in equity on the ground of laches." Syl. Pt. 1, in part, *State ex rel. Smith v. Abbott*, 187 W. Va. 261, 262, 418 S.E.2d 575, 576 (1992). Earlier this term we discussed the doctrine of laches:

> "[L]aches is an equitable doctrine based on the maxim that equity aids the vigilant, not those who slumber on their rights." *Banker v. Banker*, 196 W. Va. 535, 547, 474 S.E.2d 465, 477 (1996). This Court has applied laches where there has been "a delay in the assertion of a known right which works to the disadvantage of another, or [where] such delay . . . warrant[s] the presumption that the party has waived his right." Syl. pt. 2, *Bank of Marlinton v. McLaughlin*, 123 W. Va. 608, 17 S.E.2d 213 (1941). Put succinctly, "[t]he elements of laches consist of (1) unreasonable delay and (2) prejudice." *Province v. Province*, 196 W. Va. 473, 473 S.E.2d 894 (1996).

*Estate of Tilley ex rel. Graybeal v. Justice*, No. 22-0333, 2024 WL 1924978, at * 4 (W. Va. May 1, 2024) (memorandum decision).

To invoke the doctrine of laches a defendant must have clean hands: "Equity will not, at the suit of a wrongdoer, lend its aid in extricating him from a position where his own fraudulent or illegal conduct has placed him." Syl. pt. 1, *Jones v. Evans*, 123 W. Va. 394, 15 S.E.2d 166 (1941). This equitable doctrine "exist[s] for the purpose of maintaining the dignity and integrity of the court acting only to administer equity." *Wheeling Dollar Sav. & Tr. Co. v. Hoffman,* 127 W. Va. 777, 780, 35 S.E.2d 84, 86 (1945).

Here, the circuit court found that the petitioners "knew their rights or were cognizant of their interest in seeking reimbursement of any funds expended to operate the well" by 2012 and had not, aside from the current action, "sought to seek reimbursement through any legal actions, such as a lien or a civil action, against any current or former property owner." As to prejudice caused by this delay, the court found that "the passage of time alone presents an unsurmountable mountain of prejudice" to the respondents. In granting the respondents' motion the court did not differentiate from those damages that were purportedly incurred around the time that the water association deed was signed and more recent expenses. Thus, the court found that *all* of the petitioners' claimed damages—even those damages which were incurred as recently as 2021—were barred by the doctrine of laches.

We are mindful that the circuit court applied the doctrine of laches at the inception of the litigation, upon consideration of a motion to dismiss. We have noted that a "Rule 12(b)(6) motion is no place to make factual findings, or to dismiss a complaint because the court believes that the odds of the plaintiff recovering damages is very remote." *Gable v. Gable*, 245 W. Va. 213, 229, 858 S.E.2d 838, 854 (2021). Because the question of whether the equitable doctrine of laches can be applied to bar a claim "depends upon the particular facts of each case" and requires the court to

make factual findings, it is not generally appropriately applied at the motion to dismiss stage of the litigation. *Hartley v. Ungvari*, 173 W. Va. 583, 587, 318 S.E.2d 634, 638 (1984). "Laches ordinarily must be determined in the trial on the merits. Whether a person has been guilty of unreasonable or inexcusable delay in seeking to protect or enforce his or her rights is ordinarily a question of fact, which properly may be submitted to a jury." 34 Tex. Juris. 3d *Equity* § 56 (2024); *see also Province*, 196 W. Va. at 485, 473 S.E.2d at 906 (finding that record was insufficient to permit a meaningful review of the clean hands doctrine and noting that "[t]he determinative equity-based principles at work here are highly fact-sensitive that require a full hearing of the evidence on the issue").

In concluding that the petitioners' claims and all resulting damages were barred by the doctrine of laches, the circuit court inappropriately made factual findings at the motion to dismiss stage. Even if the evidence eventually establishes that laches bars some of the damages alleged by the petitioners, we struggle to comprehend the court's ruling that effectively bars *all* recovery by the petitioners, even for recent expenditures. This is especially true where there is a question as to whether the respondents had "clean hands," as they had record notice of the deed that required them to pay for use of BBMR water, availed themselves of BBMR water, and apparently did not pay for this benefit. Thus, the defense of laches is not clear from the face of the complaint, and the circuit court erred in dismissing petitioners' complaint on the ground that the claims were barred by laches.

## IV.    Conclusion

For the foregoing reasons, we reverse the June 23, 2022, order of the Circuit Court of Summers County, granting the respondents' motion to dismiss and remand for further proceedings.

Reversed and remanded.

**ISSUED:** May 20, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn